HERRON, RESPONDENT, *v.* FROST, APPELLANT.

MARRIED WOMEN—*Statutory construction*—*Husband and wife*—*Promissory note.* —The common-law disability of husband and wife to enter into contracts with each other is not removed by the provisions of sections 1434 and 1435 of the fifth division of the Compiled Statutes, defining and prescribing the rights and liabilities of a married woman who has filed a declaration of sole trader, and a promissory note made by such married woman to her husband is a nullity and void in the hands of a *bona fide* purchaser. (Case of *Vantilburg* v. *Black,* 3 Mont. 459, cited.)

*Appeal from Sixth Judicial District, Gallatin County.*

The cause was tried before LIDDELL, J., without a jury.

*Luce & Luce,* for Appellant.

The common law is in full force in this State, except where expressly repealed or altered by the legislature. (§ 201, p. 647, Comp. Stats. Mont.; *Wilson* v. *Davis,* 1 Mont. 193.) There can be no doubt that at common law the civil existence of the wife is merged in that of her husband. Blackstone says that "husband and wife are one person in law," and that "the legal existence of the woman is suspended during the marriage, or, at least, is incorporated and consolidated into that of her husband." (Vol. 1. p. 442; *Van Maren* v. *Johnson,* 15 Cal. 312.) A married woman has no power to execute a promissory note in her own name. (*Simpers* v. *Sloan,* 5 Cal. 458.) No action will lie to recover upon a note given by a husband to a wife, or a wife to her husband, during coverture, for they cannot contract, and the note is void. (*Jackson* v. *Parks,* 10 Cush. 550; *Roby* v.

*Phelon*, 118 Mass. 541; Stewart on Husband and Wife, § 41, notes 8, 9, 10, §§ 36, 46, 356, 358; 1 Parsons on Contracts, 344, 365, 367, 359, n. *h*; *Sweat* v. *Hall*, 8 Vt. 187; *Yale* v. *Dederer*, 18 N. Y. 276; 72 Am. Dec. 503; Newmark on Sales, § 55; *Wallingsford* v. *Allen*, 10 Peters, 583, 594; *Knowles* v. *Hull*, 99 Mass. 562; *Wilson* v. *Bryant*, 134 Mass. 300; *Fowle* v. *Torrey*, 135 Mass. 89; *Silverman* v. *Silverman*, 140 Mass. 562; *Washburn* v. *Hale*, 10 Pick. 432; *Hyde* v. *Stone*, 9 Cowen, 230; 18 Am. Dec. 501; *Winslow* v. *Crocker*, 17 Me. 29; *Putnam* v. *Bicknell*, 18 Wis. 333; *Ballin* v. *Dillayne*, 37 N. Y. 35; *Winans* v. *Peebles*, 32 N. Y. 423; *Whitaker* v. *Whitaker*, 52 N. Y. 368; 11 Am. Rep. 711; *Bassett* v. *Bassett*, 112 Mass. 99; *Ingham* v. *White*, 4 Allen, 412; *Gay* v. *Kingsley*, 11 Allen, 345.) The note in this case was given before the passage of our Married Women's Act, approved March 3, 1887, but plaintiff claims that the note is valid under the provisions of article xi., fifth division, Revised Statutes of 1879, and particularly section 869 of said article. It is contended by the plaintiff that this section of the statute repeals the common law and destroys the unity of husband and wife, and allows them to contract. But it is clear that this doctrine is not sustained by any authorities. This statute, being in derogation of the common law, must be strictly construed. Nothing will be supplied by implication, and it will not be presumed to alter the common law further than it expressly declares. (Sedgwick on Statutory Construction, p. 267, and notes; Stewart on Husband and Wife, § 16, and cases cited; *Lord* v. *Parker*, 3 Allen, 127; *Snyder* v. *Webb*, 3 Cal. 83; *Wedel* v. *Herman*, 59 Cal. 511; *Selover* v. *American R. C. Co.* 7 Cal. 270; *Dow* v. *Gould & C. M. Co.* 31 Cal. 629; *Robertson* v. *Bruner*, 24 Miss. 242; *Kneil* v. *Egleston*, 140 Mass. 202; *Rosa* v. *Prather*, 103 Ind. 191; *Barnett* v. *Harsbarger*, 105 Ind. 414.) We think the case of *Barnett* v. *Harsbarger*, *supra*, and *White* v. *Wager*, 25 N. Y. 328, 333, 334, should settle the case at bar, both holding under statutes much more liberal than our own. The case of *Meeker* v. *Wright*, 76 N. Y. 262, was very much relied on by the plaintiff in the court below as changing the rule laid down in *White* v. *Wager*, but an examination of these two cases will show that such is not the intention or effect of the decision in *Meeker* v. *Wright*. In the

first place, *Meeker* v. *Wright* is purely an equitable proceeding; and in the next place it construed a later statute than that under consideration in *White* v. *Wager;* and in the third place it quotes with approval the case of *White* v. *Wager.* Statutes relating to the property rights of husband and wife do not affect their personal status or relation, and consequently, unless the statute refers to the husband specially, his disability *is not* removed. (Stewart on Husband and Wife, § 14, and particularly § 15, and cases cited.)

*Armstrong & Hartman,* for Respondent.

It is needless to discuss the rights of a married woman to contract with her husband under the common law. She had no such rights, and that question is not in this case. At the time of the execution of the notes sued on the only statute authorizing the wife to contract was the sole trader act (§§ 1433–1438, inclusive, 5th div. Comp. Stats. Mont.), and a construction of that statute will determine this case. The words of the statute are very broad, granting to a sole trader "all the privileges" and making her liable for "all the processes . . . . provided by law against debtors and creditors." It will be observed that there are no exceptions or reservations to the rights granted or obligations imposed by this statute, and there being no exceptions, reservations, or prohibitions, every right and corresponding obligation is hers, and she may contract with her husband. (*Bank of America* v. *Virginia Bank,* 101 U. S. 240; *Voorhees* v. *Bonesteel,* 16 Wall. 31; *Jaycox* v. *Caldwell,* 51 N. Y. 395; *Meeker* v. *Wright,* 76 N. Y. 264; *Wells* v. *Caywood,* 3 Colo. 492; *Hamilton* v. *Hamilton,* 89 Ill. 349; *Greer* v. *Greer,* 24 Kan. 101; *Morrison* v. *Thistle,* 67 Mo. 596; *Turner* v. *Shaw,* 96 Mo. 22; Schouler on Husband and Wife, § 396; 1 Randolph on Com. Paper, § 315; Schouler on Domestic Relations, 192; Bishop on Married Women, §§ 35, 37, 713, 717; *Zimmerman* v. *Erhard,* 58 How. Pr. 11, 13; *Albin* v. *Lord,* 39 N. H. 196; *Griswold* v. *Boley,* 1 Mont. 559; 3 Pomeroy's Equity Jurisprudence, § 1126.) The defendant would be liable even if the note had not been executed for the benefit of her separate property. (*Wood* v. *Orford,* 52 Cal. 412; *Major* v. *Holmes,*

124 Mass. 108; *Deering* v. *Boyle*, 8 Kan. 525; 12 Am. Rep. 480; *Wicks* v. *Mitchell*, 9 Kan. 85.) Having signed the note as a sole trader, she is estopped from denying that it was given for any other than her use as such sole trader. (*Bodine* v. *Killeen*, 53 N. Y. 93; *Smith* v. *Dunning*, 61 N. Y. 251; *Nash* v. *Mitchell*, 71 N. Y. 203; 27 Am. Rep. 38; *Cashman* v. *Henry*, 75 N. Y. 112; 31 Am. Rep. 437; *Meeker* v. *Wright*, 76 N. Y. 262; *Saratoga Bank* v. *Pruyer*, 90 N. Y. 250.) The tendency of modern legislation is to abate the rigor of the common law regarding the disabilities of married women. But when a new right is extended to them a corresponding obligation is necessarily created. (*Meeker* v. *Wright, supra; Wells* v. *Caywood, supra; Hamilton* v. *Hamilton, supra.*) The Massachusetts cases cited by appellant are based upon a statute. (Gen. Stats. Mass. ch. 184.) The closing words of section 1 of that statute are: "Nothing in this act shall authorize a married woman to convey property or make contracts with her husband."

BLAKE, C. J.— The respondent filed, December 1, 1888, his complaint, and alleged that appellant is the wife of Nathan Frost; that she is a sole trader, carrying on the business of farming at Gallatin County, Montana; and that on the eighth day of February, 1887, as such sole trader, and for her use, benefit, and purpose, as such sole trader, she did make and deliver to said Nathan Frost, for a valuable consideration, the following promissory note, to wit:—

"BOZEMAN, MONTANA, February 8, 1887.
"Ten months after date, for value received, I promise to pay to Nathan Frost, or order, two hundred and sixty dollars, with interest at the rate of ten per cent per annum from date until paid.  LORETTA E. FROST, Sole Trader."

That afterwards, and before the maturity of this note, the respondent purchased it for a valuable consideration, and is now the owner and holder thereof, and that no part of the same has been paid.

The answer alleged that "said note was given by the defendant to said Nathan Frost for the balance of an account claimed by said Nathan Frost to be due to him from the defendant for

work done by said Nathan Frost for defendant long prior to the date of said note, and prior to the time the defendant filed her declaration as sole trader, and before she made such declaration, and before she commenced business as a sole trader, the greater portion of which work was done after the defendant was married to said Nathan Frost, and while they were living together as husband and wife, as aforesaid; and so the defendant says that said note was given to said Nathan Frost for what said Nathan Frost claimed of her as a balance due him on an account which accrued long prior to her declaration or commencement of business as a sole trader, and that the claim on account of which said note was given was not against her as sole trader, nor was it in any way connected with her business as a sole trader, nor for her benefit as a sole trader, nor for the purposes of her said business." The answer further alleged "that said note was transferred to the plaintiff by said Nathan Frost without her consent or knowledge;" that the plaintiff knew at that time that defendant was, and had been for a long time, the wife of said Nathan Frost; and that plaintiff knew all the foregoing facts when he purchased the note.

The replication avers that the defendant became indebted to Nathan Frost on an account for work done by Nathan Frost for her in the sum specified in the note; that this was the consideration of the note; and that before and after the purchase of the note she informed the plaintiff that she executed the note " for her use, benefit, and purposes, as a sole trader."

Subsequently the defendant moved the court for a judgment on the pleadings. The motion was overruled. The cause was tried by the court without a jury. The sole evidence offered was the note sued on. The motion of the defendant for a nonsuit was overruled, and judgment was entered for the plaintiff.

Assuming, for the purposes of the argument, that the note above recited is valid, its introduction as evidence establishes a *prima facie* case for the plaintiff. In California, under a similar statute, the court held, in *Melcher* v. *Kuhland*, 22 Cal. 524, that " the fact that she is a sole trader, and that she executed the note, is sufficient to raise the presumption, if any presumption is necessary, that the debt was contracted on account of her business as a sole trader." The appellant in the case at bar

strengthened this presumption, if possible, by adding to her signature the words "sole trader."

The question that now confronts us is this: Could a married woman, who was a sole trader under the laws of Montana upon the eighth day of February, 1887, make and deliver to her husband a legal promissory note? If she then possessed this power, the judgment was lawfully entered; but, if this authority has not been conferred in express terms, the instrument is void, and no recovery can be had thereon. The transfer of the note by the husband before it was due to a *bona fide* purchaser for a valuable consideration does not affect the relations of the parties.

There is a question of turpitude in this transaction, which is not within our jurisdiction; but we cannot keep silent, and will remark that the appellant has sought and accepted all the statutory privileges of a sole trader, and at the same time pleaded her disability as a married woman to evade the payment of an honest debt. We are obliged to confess that her defense is maintained by the authorities.

This court, in the case of *Vantilburg* v. *Black*, 3 Mont. 459, investigated some of the propositions which have received the consideration of counsel, and concluded that a married woman had no right to make a promissory note, and execute a mortgage to secure its payment, and that the entry of a personal and deficiency judgment against her was erroneous. Mrs. Vantilburg was not a sole trader, and the effect of the statute governing this subject was not involved in the decision. Does the act modify the common-law disabilities relating to husband and wife, and allow the appellant to make and deliver the promissory note which is owned by the respondent? The provisions of the statute, which are relied on by the respondent, declare that from the date of her declaration she " shall be individually responsible in her own name for all the debts contracted by her by virtue of said business." (Comp. Stats. div. 5, § 1434.) "After such declaration has been duly recorded, as heretofore provided, the person so making her declaration, as aforesaid, shall be entitled to carry on her business in her own name, and the property, revenue, money, and debts and credits shall belong exclusively to said married woman, and shall not be liable for any of the debts of her husband; and she shall be allowed all

the privileges, and be liable for all the legal processes, now or hereafter provided by law against debtors and creditors." (Comp. Stats. div. 5, § 1435.)

There is no clause which provides that a married woman, under this act, shall be liable for her engagements in the same manner as if she were sole, or that a husband or wife may enter into any contracts with the other respecting property which either might do, if unmarried, or any language of like signification. These weighty phrases, which are incorporated in the legislation of other States upon this matter, render inapplicable to this hearing the decisions of courts on which they are founded.

In *Lord* v. *Parker*, 3 Allen, 129, Mr. Justice Hoar refers to this legislation, and says: "Their leading object is to enable married women to acquire, possess, and manage property, without the intervention of a trustee, free from the interference or control, and without liability for the debts, of their husbands. They are in derogation of the common law, and certainly are not to be extended by construction. And we cannot perceive in them any intention to confer upon a married woman the power to make any contract with her husband. . . . . If she could contract with her husband, it would seem to follow that she could sue him, and be sued by him. How such suits could be conducted, with the incidents in respect to discovery, the rights of parties to testify, and to call the opposite party as a witness, without interfering with the rule as to private communications between the husband and wife, it is not easy to perceive; and the consequences which would follow in respect to process for the enforcement of rights fixed by a judgment, arrest, imprisonment, charges of fraud, proceedings *in invitum* under the insolvent laws, and the like, are not of a character to be readily reconciled with the marital relation. We cannot suppose that an alteration in the law involving such momentous results, and a change so radical, could have been contemplated by the legislature, without a much more direct and clear manifestation of its will."

In *Haas* v. *Shaw*, 91 Ind. 389; 46 Am. Rep. 607, the court construed a similar statute, and approved *Lord* v. *Parker*, *supra*, and said: "We are of opinion that these statutory provisions did not wholly abrogate or supersede the common-law rule in

force in this State at the time of their enactment, under which, as we have seen, a married woman was incapable of binding herself by any executory contract, and all such contracts, howsoever made, were absolutely void."

In *Barnett* v. *Harshbarger*, 105 Ind. 414, the same views are entertained, and the court says: "The question is not whether disabilities have been removed, but whether the long prevailing rule of the law, declaring husband and wife to be one person in legal contemplation, has been annulled. This question cannot be solved by affirming that a disability has been removed, for there yet remains the positive rule that the husband and wife are one person. Until this rule is annulled, they cannot contract with each other as persons not bound together by marital ties, and, so long as they cannot thus contract, the usual rules of law do not govern their transactions." (See, also, *Bear's Adm'r* v. *Bear*, 33 Pa. St. 525; *Robertson* v. *Bruner*, 24 Miss. 244; *Jenne* v. *Marble*, 37 Mich. 325; *Dodge* v. *Kinzy*, 101 Ind. 106; *Roby* v. *Phelon*, 118 Mass. 541; Schouler on Domestic Relations [3d ed.], § 192; Kelly's Contracts of Married Women, 225, 263, 264.) When these decisions are applied to the laws of Montana which were in force at the time of the making of the foregoing promissory note, we cannot escape the deduction that the appellant could not enter into contracts of this nature with her husband. The instrument which is the foundation of this action is a nullity, and cannot support the judgment which has been entered herein.

It is therefore adjudged that the judgment be reversed, with costs, and that the cause be remanded, with directions to dismiss the action.

HARWOOD, J., and DE WITT, J., concur.