Filed June 19, 1896.

No. 1,644.

HEROD ET AL. *v.* STATE, EX REL. WHISTLER, GUARDIAN.

GRAVEL ROADS.—*Bond.*—*Action.*—A bond taken in pursuance of section 6859, R, S. 1894 (section 5095, R. S. 1881), providing for the letting of contracts for the construction of free gravel roads, conditioned for the proper performance of the contract within the

Herod *et al. v.* State, *ex rel.* Whistler, Guardian.

time and manner prescribed by the county commissioners, is subject to the provisions of section 1235, R. S. 1894, providing that no bond taken by an officer in discharge of his duty shall be void for want of form or substance.

APPELLATE PROCEDURE.—*Immaterial Evidence Omitted from Bill of Exceptions.*—That certain evidence is not included in the bill of exceptions will not prevent the Appellate Court from passing upon the question which it is plain the omitted evidence does not affect.

SAME. — *Rehearing.* — *Error Waived.* — The objection that appellant waived error assigned for reversal, cannot be made for the first time on motion for rehearing.

From the Boone Circuit Court.

*Ralston & Keefe*, for appellants.

*A. J. Shelby*, and *Lamb, Hill & Dye*, for appellee.

GAVIN, C. J.—Appellee sued appellants upon a bond executed (upon its face) to the board of commissioners of Hendricks county, to secure the performance of a contract to build a free gravel road. The bond was nearly similar to and executed under like circumstances with those sued on in the cases of *Faurote* v. *State, ex rel.*, 110 Ind. 463, and *Hart* v. *State, ex rel.*, 120 Ind. 83. From the averments of the complaint, we learn that the county commissioners had ordered the construction of a free gravel road; had received bids therefor, and had directed the engineer or superintendent to let the contract to Herod & Budd, the principals in the bond, who thereupon, with their sureties, executed the bond in suit. It is asserted that by the mistake of the commissioners it was made payable to the board, instead of to the State, and that "said bond is not in terms of construction as required by law, as said bond fails to allege that the principals therein named should pay" the laborers, materialmen, etc.

This bond, like those involved in the two cases cited, was executed, not as a preliminary bond, ac-

companying the bid, but contemporaneously with the letting of the contract to the contractors.

Section 6859, R. S. 1894 (5095, R. S. 1881), being part of the free gravel road law, provides for the letting of such contracts by the engineer, with the approval of the board, to the lowest bidder, "who shall give such reasonable security for the proper performance of his contract, within the time and manner prescribed, as the county commissioners shall deem expedient."

Section 5592, R. S. 1894 (4246, R. S. 1881), being part of a statute relating to public contracts, enacts that no bid for building any county work shall be received or entertained by any board of commissioners, unless it should be accompanied by a sufficient bond, payable to the State, which should guarantee the performance of the work if awarded the bidder, and that the contractor should promptly pay all debts incurred therein, including labor, materials, and board of laborers thereon.

By section 1235, R. S. 1894 (1221, R. S. 1881), no bond taken by an officer in the discharge of his duty shall be void for want of form or substance; but the principal and surety shall be bound thereon to the full extent contemplated by the law requiring the same, and in all actions on a defective bond, the plaintiff may suggest the defect in his complaint, and recover to the same extent as if such bond, recognizance, or written undertaking were perfect in all respects.

By the cases of *State, ex rel.*, v. *Sullivan*, 74 Ind. 121, and *Dewey* v. *State, ex rel.*, 91 Ind. 173, it was adjudged that the board, in letting contracts for a free gravel road, should be governed by section 5592. In the Faurote case, *supra*, the plaintiffs invoked the aid of the curative statute, section 1235, *supra*, and sought to enforce against the bondsmen a liability to pay

laborers, although not so specified in the bond, it being averred, as the opinion states, "that owing to a mistake, the bond was made payable to the board of commissioners, instead of the State of Indiana, and that it was not in terms conditioned as the law required, that the principals therein named should promptly pay all debts incurred in the prosecution of the work, for labor, material, etc." It was therein claimed, by the defendants, that the bond was executed in pursuance of section 6859, which required only security for the performance of the contract, and that section 4246 had no application to the case, and, therefore, there could be no resort to the curative statute. But the court held that "Section 4246 (5592), is a general provision, and applies to all bonds taken in connection with contracts for public works, which boards of commissioners are authorized to make. Section 5095, found in the act concerning free turnpike roads, requires that a bidder for the construction of any part of such road shall give reasonable security for the proper performance of his contract. The other section referred to prescribes specifically the character of all bonds to be taken by county commissioners upon letting contracts for the construction of county works. * * * The bond having been taken in pursuance of a public statute, falls under the description of an official bond, and is subject to the provisions of section 1221, R. S. 1881. It was, therefore, proper that the defects in the bond, growing out of the omissions referred to, should be suggested in the complaint. When the defects were so suggested, the bond could be recovered on, to the same extent as if it had been in all respects a perfect statutory bond in terms." The complaint was therefore held good.

In the Hart case, *supra*, the Supreme Court held the complaint good upon the authority of the Faurote

case, the averment there being, that the omissions were by reason of the "scrivener's mistake." The court saying: "The bond was given pursuant to a public statute, and under the provisions of section 1221, R. S. 1881, the parties in interest had a right to have mistakes corrected so as to give the bond the effect the law intended it should have."

The court, however, held the evidence insufficient, and declared: "We find no evidence of any mistake in the preparation of the bond, and we cannot agree with the view of counsel, that the statute, of its own vigor, imported conditions of the instrument. * * * * We cannot perceive any legal reason upon which the obligors can be held in this action without evidence that they agreed to be bound for debts due persons performing labor and furnishing material. * * * Sureties cannot be held beyond the plain import of their obligation, where, as here, the obligation is clear and unambiguous on its face, without some evidence of an intention or agreement to be° bound beyond the terms and conditions of their bond."

It was further held that the board had a right, under section 6859, to take just such a bond as was taken, and that while a suggestion of mistake might be sufficient as a matter of pleading, there must, upon trial, be evidence of the mistake, or the plaintiff must fail.

Counsel for appellee rely upon the Faurote case, which they say is followed and approved by the Hart case, and it so declares, and he claims he has averred everything averred in either of those cases, and should not be required to allege anything more; and, further, that he should not be called upon to prove any more than he has alleged.

Counsel for appellant, on the other hand, argue

that, upon the principles asserted in the Hart case, the bondsmen cannot be held liable, unless they had "some intention or agreement to be bound beyond the terms of their bond," and that the bond being just such an one as the commissioners were authorized to take, the curative statute cannot be invoked, and that there is, therefore, no liability beyond the terms of the bond, in the absence of any averment of mistake upon their part, and that the averments in the complaint should be as broad as the proof required to sustain it.

Just how far, if at all, these cases conflict we do not feel called upon to determine, since this case must be reversed upon other grounds, and we have no doubt the pleadings will be so amended upon a retrial as to show more clearly the character of the bond sued on, and the circumstances under which it was executed.

One cause for new trial is based upon the court's refusal, at the close of the evidence, to instruct the jury to return a verdict for the defendants. To this instruction appellants were entitled. The action was founded upon the bond. This bond had not been offered in evidence, nor had any proof of its contents been made. Without it appellee could not recover.

It is the duty of the trial court, whenever there is an entire failure of proof upon any essential fact, to direct a verdict against the party thus failing to make his case. *Hodge* v. *Farmers Bank*, 7 Ind. App. 94; *Oleson* v. *Lake Shore, etc., R. W. Co.*, 143 Ind. 405; *Ohio, etc., R. W. Co.* v. *Dunn*, 138 Ind. 18; *Weis* v. *City of Madison*, 75 Ind. 241 (254); 2 Elliott Gen. Pract., section 890.

It is true, the bill of exceptions does not contain all the evidence, certain documentary evidence having been, according to the certificate of the judge in the bill, lost before the longhand manuscript was pre-

pared. But it does clearly appear from the bill that this bond was not among those papers lost, and that it was not offered in evidence. While it is a general rule that all the evidence must be in the record, to enable the court to determine questions arising upon the evidence, yet it is equally well settled that when it is made plain that the absent evidence did not affect the point involved, and there is sufficient in the bill to demonstrate the fact of the error and its material character, then the court will consider the question and adjudge a reversal thereon. The law is thus expressed by Judge Davis, in *Am. Fire Ins. Co.* v. *Sisk*, 9 Ind. App. 305: "It is true, there are expressions in some of the cases, where there appears to have been an omission from the record of some evidence, however insignificant such omission may have been, which seem to hold that no question in relation to the evidence or instructions can be considered in such condition of the record under any circumstances. Such statements must be limited so as not to apply to cases where it appears that the omitted evidence was not necessary to fairly present the question, or questions, sought to be raised."

To same effect is *Meyers* v. *Home Ins. Co.*, 15 Ind. App. 425.

Judgment reversed, with instructions to sustain the motion for a new trial.

Filed March 3, 1896.

## On Petition for Rehearing.

GAVIN, J.—Counsel argue that the court erred in its original opinion in "holding that it was necessary that the complaint in said cause should be so amended as to show more clearly the character of the bond sued on, and the circumstances under which it was executed." It is counsel, and not the court, who are in

error as to this point, for the court did not so hold. We simply stated our belief that such amendment would be made, thinking that thus the questions of law sought to be raised would be the more distinctly presented. Of course, if counsel are still satisfied with the pleadings, they have the right to stand upon them. That counsel do not, however, argue the case made by the record, is indicated by the fact that they state in their brief: "It appears from the record, it (the bond sued on) was the only bond filed in the case." Yet this fact is not disclosed by the pleadings in any manner, while, according to the evidence, R. p. 54, l. 21, 23, there was another bond filed with the bid.

There is, in the original opinion, nothing which in any degree contravenes our holding in *Lane* v. *State, ex rel.*, 14 Ind. App. 573, and *Shroyer* v. *Simons*, 14 Ind. App. 631.

That the error in overruling appellants' motion for an instruction in their favor, was subsequently waived, was not claimed in the brief upon the original presentation of the cause. It now comes too late.

After considering all the points made by appellee, we are still of the opinion that the judgment should be reversed.

Petition overruled.

Filed June 19, 1896.